UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA

08 Cr. 176-01 (RWS)

- against -

AMENDED
SENTENCING OPINION

LEO PAOLINO-MELENDE a/k/a JUAN CARLOS
PEREZ,

Defendant.

------------------------------------------X

Sweet, D.J.

On April 28, 2008, Leo Paulino-Melende ("Paulino-
Melende" or "Defendant") appeared before this Court and pled
guilty to one count of illegal re-entry following conviction for
an aggravated felony, in violation of 8 U.S.C. § 1326(a) and
(b)(2). For the reasons set forth below, Paulino-Melende will be
sentenced to 30 months' imprisonment and 3 years' supervised
release. Paulino-Melende also will be required to pay a special
assessment of $100.

**Prior Proceedings**

Indictment 08 cr 176 (RWS) was filed in the Southern
District of New York on March 3, 2008. Count I charges that from
March 2007 through January 2, 2008, in the Southern District of

1

New York and elsewhere, Leo Paulino-Melende, a/k/a "Juan Carlo Perez," "Leo Paulino," "Juan Morel," "Amauris Porter," being an alien, was found in the United States after having been deported from the United States subsequent to a conviction on October 6, 1997, for criminal sale of a controlled substance, an aggravated felony, in New York County Supreme Court, without having obtained the express consent of the Attorney General of the United States or his successor, the Secretary for the Department of Homeland Security, to reapply for admission.

On April 28, 2008, Paulino-Melende appeared before this Court and pleaded guilty to Count I without the benefit of a plea agreement.

The Government has presented its position on the application of the U.S. Sentencing Guidelines in a Pimintel letter, as follows:

- the applicable guideline is §2L1.2 which designates a base offense level of eight;

- pursuant to §2L1.2(b)(1)(A)(i), since the Defendant was previously deported subsequent to a conviction for a felony drug trafficking offense, a 16-level increase is applicable;

- pursuant to §3E1.1(a) and (b), since the defendant pled guilty in a timely manner, a three-level reduction for acceptance of responsibility is applicable;

- the Defendant's Criminal History Category is IV;

- based on the aforementioned calculations, the total
  offense level is 21, the guideline range for
  imprisonment is 57 to 71 months, and the fine range
  is $7,500 to $75,000.

On October 2, 2008, this Court issued a draft
Sentencing Opinion.

On October 3, 2008, counsel for Paulino-Melende
submitted a memorandum arguing for a reduced sentence. That
memorandum did not dispute the Government's calculation of the
Guidelines range. However, Paulino-Melende argues that the
sentence should be reduced because he does not intend to return
to the United States, and because the Guidelines range is
inappropriately high in this case due to "double-counting" of
Defendants' prior drug offenses and the "fast-track" disparity
that results from the fact that some districts have fast-track
programs which offer defendants in Paulino-Melende's position an
opportunity for a 4-point reduction, considerably reducing the
Guidelines sentence.

Sentencing is scheduled for October 7, 2008.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United
States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's
decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005),
the sentence to be imposed was reached through consideration of all
of the factors identified in 18 U.S.C. § 3553(a), including the
advisory Sentencing Guidelines (the "Guidelines") established by
the United States Sentencing Commission. As the Supreme Court
explained in Gall v. United States, 128 S.Ct. 586 (2007):

> [A] district court should begin all sentencing
> proceedings by correctly calculating the applicable
> Guidelines range. As a matter of administration and
> to secure nationwide consistency, the Guidelines
> should be the starting point and the initial
> benchmark. The Guidelines are not the only
> consideration, however. Accordingly, after giving
> both parties an opportunity to argue for whatever
> sentence they deem appropriate, the district judge
> should then consider all of the § 3553(a) factors to
> determine whether they support the sentence
> requested by a party. In so doing, he may not
> presume that the Guidelines range is reasonable. He
> must make an individualized assessment based on the
> facts presented.

Id. at 596 (internal citation and footnote omitted). Thus, in
addition to analysis of the Guidelines, the sentence imposed here
results from consideration of:

> (1) the nature and circumstances of the offense and
> the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed-
>
>> (A) to reflect the seriousness of the offense,
>> to promote respect for the law, and to
>> provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal

4

conduct;

> (C) to protect the public from further crimes
> of the defendant; and
>
> (D) to provide the defendant with needed
> educational or vocational training,
> medical care, or other correctional
> treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range
established for-

> (A) the applicable category of offense
> committed by the applicable category of
> defendant as set forth in the guidelines .
> . . ;

(5) any pertinent policy statement . . . [issued by
the Sentencing Commission];

(6) the need to avoid unwarranted sentence
disparities among defendants with similar records
who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims
of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all

the facts appropriate for determining a sentence, whether that

sentence is a so-called Guidelines sentence or not. See Crosby,

397 F.3d at 111.

In light of the Court's statutory responsibility "to

'impose a sentence sufficient, but not greater than necessary' to

accomplish the goals of sentencing," Kimbrough v. United States,

128 S. Ct 558, 571 (2007) (quoting 18 U.S.C. § 3553(a)), and

5

having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a non-Guidelines sentence is warranted in the instant case.

## The Defendant

The Court adopts the facts set forth in the Probation Department's Presentence Investigation Report ("PSR") with respect to Paulino-Melende's personal and family history.

## The Offense Conduct

The following description draws on the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

Paulino-Melende is a citizen of the Dominican Republic. He never has been a citizen of the United States.

On October 6, 1997, Paulino-Melende was convicted in the Supreme Court of New York, Bronx County, of Criminal Sale of a Controlled Substance in the Third Degree, a felony. When Paulino-Melende was arrested, it was under the name "Juan Morel."

On March 20, 1999, Paulino-Melende was deported from

6

the United States. He later re-entered the United States and was arrested in October 2005.

On December 5, 2005, Paulino-Melende was deported from the United States for the second time. He later re-entered the United States and on January 2, 2008, was arrested in Manhattan by local law enforcement authorities. On January 3, 2008, the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") was notified that an individual, arrested at that time under the name "Juan Carlo Perez" had previously been fingerprinted.

On February 26, 2008, a fingerprint specialist employed by ICE determined that the individual arrested on January 2, 2008, under the name Juan Carlo Perez was the same individual known as Leo Paulino-Melende who, on December 5, 2005, had been deported to the Dominican Republic.

Paulino-Melende never applied for permission to re-enter the United States and never was granted permission to re-enter the United States.

On March 3, 2008, Paulino-Melende was transferred to federal custody.

**The Relevant Statutory Provisions**

The maximum statutory sentence for violation of 8 U.S.C. § 1326(b)(2) is 20 years imprisonment. Count I therefore constitutes a Class C felony, pursuant to 18 U.S.C. § 3559(a)(3). There is no applicable statutory minimum sentence.

The Court may also impose a term of supervised release of up to three years, pursuant to 18 U.S.C. § 3583(b)(2).

The maximum fine is $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Paulino-Melende is eligible for not less than one and no more than five years' probation, pursuant to 18 U.S.C. § 3561(c)(1). Because the offense is a felony, one of the conditions outlined in 18 U.S.C. § 3563(b) must be imposed as a condition of probation, pursuant to 18 U.S.C. § 3563(a)(2).

**The Guidelines**

The May 1, 2008 edition of the United States Sentencing

Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a).

The guideline for a violation of 8 U.S.C. § 1326(a) and (b)(2) is found in §2L1.2(a), and designates a base offense level of eight.

Since Paulino-Melende was previously deported subsequent to a conviction for a felony drug trafficking offense which resulted in a sentence of more than 13 months, pursuant to §2L1.2(b)(1)(A), a 16-level increase is applicable.

Defendant has shown recognition of responsibility for the offense. Because of his timely notification of his intention to plead guilty, thus allowing the Government to allocate its resources more efficiently, and because the aforementioned base offense level is 16 or greater, pursuant to §3E1.1(a) and (b) the offense level is reduced by three.

Accordingly, the applicable offense level is 21.

On March 18, 1996, Paulino-Melende was arrested for Criminal Sale of a Controlled Substance in the Third Degree. On October 6, 1997, he was sentenced to 1 to 3 years custody.

Pursuant to §4A1.1(a), this conviction warrants 3 criminal history points.

On May 6, 1996, Paulino-Melende was arrested for Criminal Sale of a Controlled Substance in the Third Degree. He was sentenced on October 6, 1997, to 1 to 3 years custody. This appears to be a concurrent sentence entered at the same time as the sentence discussed in the previous paragraph. Pursuant to §4A1.2(a)(2), if the defendant was arrested for the first offense prior to committing the second offense, the offenses are treated as two separate crimes for the purpose of calculating criminal history points. The PSR does not indicate whether that is the case here. However, the Government represents that this sentence was imposed for an offense that was separated by an intervening arrest from the offense for which the sentence in the preceding paragraph was imposed. In reliance on that representation, 3 criminal history points are added.

On October 27, 2005, Paulino-Melende was arrested for Criminal Sale of Marihuana in the Fourth Degree, and on October 28, 2005, was sentenced to 20 days' custody and a suspended license. Pursuant to §4A1.1(c), this conviction warrants 1 criminal history point.

On January 2, 2008, Paulino-Melende was arrested for Criminal Sale of Marihuana in the Fourth Degree, and on January 8, 2008, was sentenced to 10 days' custody and a suspended license. Pursuant to §4A1.1(c), this conviction warrants 1 criminal history point.

A total of eight criminal history points establishes a Criminal History Category of IV, pursuant to the table at Chapter 5, Part A of the Sentencing Guidelines.

Based on a total offense level of 21 and a Criminal History Category of IV, the Guidelines range for imprisonment is 57 to 71 months.

The Guidelines range for a term of supervised release is at least two, but not more than three years, pursuant to §5D1.2(a)(2).

Because the applicable guideline range is in Zone D of the Sentencing Table, Paulino-Melende is not eligible for probation, pursuant to §5B1.1, application note 2.

The fine range for the instant offense is from $7,500 to $75,000, pursuant to §5E1.2(c)(1) and (c)(2). Subject to the

Defendant's ability to pay, in imposing a fine, the Court shall

consider the expected costs to the Government of any

imprisonment, probation, or supervised release imposed, pursuant

to § 5E1.2(d)(7). The most recent advisory from the

Administrative Office of the United States Courts suggests a

monthly cost of $2,076.83 to be used for imprisonment, a monthly

cost of $301.80 for supervision, and a monthly cost of $1,905.92

for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guideline analysis, this Court

also gives due consideration to the remaining factors identified

in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient,

but not greater than necessary," as is required in accordance

with the Supreme Court's decision in Booker, 543 U.S. 220, and

the Second Circuit's decision in Crosby, 397 F.3d 103. Pursuant

to all of the factors, and in particular 18 U.S.C. § 3553(a)(1),

(2), (5) and (6), imposition of a non-Guidelines sentence is

warranted.

## The Fast Track Disparity

Section 3553(a)(6) instructs courts to consider "the

12

need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A number of courts, including courts in this district, have recognized the unwarranted sentencing disparities that result from so-called "fast track" programs for dealing with illegal reentry cases. See, e.g., United States v. Miranda-Garcia, No. 6:05-Cr-202-Orl-31DAB, 2006 WL 1208013, at *2 (M.D. Fla. May 4, 2006); United States v. Ramirez-Ramirez, 365 F. Supp. 2d 728, 731-32 (E.D. Va. 2005); United States v. Galvez-Barrios, 335 F. Supp. 2d 958, 963 (E.D. Wis. 2005); United States v. Bonnet-Grullon, 53 F. Supp. 2d 430, 435 (S.D.N.Y. 1999), aff'd, 212 F.3d 692 (2d Cir. 2000). This Court previously has imposed non-Guidelines sentences in recognition of the fast-track disparity. See, e.g., United States v. Santos-Nuez, 05 Cr. 1232 (RWS), 2006 WL 1409106 (S.D.N.Y. May 22, 2006); United States v. Austin, No. 05 Cr. 744 (RWS), 2006 WL 305462 (S.D.N.Y. Feb. 6, 2006); United States v. Santos, 406 F. Supp. 2d 320 (S.D.N.Y. 2005). See also United States v. Seval, 07-1204-cr, 2008 WL 4376826 (2d Cir. Sept. 25, 2008) (remanding for resentencing in light of district court's erroneous view that it did not have discretion to depart from Guidelines based on fast-track disparity).

In response to the increasing number of illegal reentry

13

arrests in certain geographical areas, a number of judicial

districts began utilizing fast-track programs to manage charges

brought under section 1326 more efficiently. The programs work

as follows:

> Through charge bargaining or stipulated departures,
> these programs allow a § 1326 offender who agrees
> to a quick guilty plea and uncontested removal to
> receive a reduced sentence . . . . In the Southern
> District of California, for example, defendants
> subject to 20 year statutory maximums and guideline
> ranges of 70-87 months were allowed to plead guilty
> to an offense carrying a two year statutory maximum
> penalty. See United States v. Banuelos-Rodriguez,
> 215 F.3d 969 (9th Cir. 2000). In other border
> districts, defendants received downward departures
> to induce fast pleas. See [Erin T. Middleton,
> Fast-Track to Disparity: How Federal Sentencing
> Policies Along the Southwest Border Are Undermining
> the Sentencing Guidelines and Violating Equal
> Protection, 2004 Utah L. Rev. 827] at 829-30.
> Recently, in the PROTECT Act, Congress made
> fast-track programs official, see Middleton at
> 838-40, and the Commission then enacted a
> guideline, § 5K3.1, providing for a 4 level
> departure on the government's motion pursuant to an
> early disposition program.

Galvez-Barrios, 355 F. Supp. 2d at 963. In other words, in

districts utilizing fast-track programs, offenders agree to a

quick removal, saving the Government resources, and in return

they receive reduced sentences.


Because offenders pleading guilty to illegal reentry in

border districts with fast-track programs receive substantially

lower sentences than those pleading guilty in other jurisdictions

(such as the Southern District of New York), Paulino-Melende

14

argues that the imposition of a sentence within the Guidelines range would create an unwarranted sentencing disparity between his sentence and the sentences imposed on defendants in fast-track jurisdictions.

While fast-track programs may create an efficient solution to an explosion of illegal reentry cases in border districts, they nevertheless result in the type of sentencing disparity cautioned against in section 3553(a)(6). As the court in Galvez-Barrios explained: "Because they operate only in certain districts (typically in southwestern states), an illegal alien stopped in California or Arizona will receive a lighter sentence than an alien convicted of the same offense and with the same record who is found in Wisconsin." 355 F. Supp. 2d at 963. As the Honorable Lewis A. Kaplan noted, "it is difficult to imagine a sentencing disparity less warranted than one which depends upon the accident of the judicial district in which the defendant happens to be arrested." Bonnet-Grullon, 53 F. Supp. 2d at 435. Because the disparity created is of the type envisioned by section 3553(a)(6), under Crosby it is appropriate for the Court to exercise discretion to minimize the sentencing disparity that fast-track programs create.

Section 3553(a)(5) instructs courts to consider policy

15

statements issued by the Sentencing Commission in determining

whether a non-guideline sentence should be imposed.  The

Sentencing Commission itself has expressed serious concern about

the unwarranted disparities that result from fast-track programs.

As the Commission explained:

> The statutory requirement that the Attorney General
> approve all early disposition programs hopefully
> will   bring   about   greater   uniformity   and
> transparency among those districts that implement
> authorized programs.   Defendants sentenced in
> districts without authorized early disposition
> programs, however, can be expected to receive
> longer sentences than similarly-situated defendants
> in districts with such programs.  This type of
> geographical disparity appears to be at odds with
> the overall Sentencing Reform Act goal of reducing
> unwarranted disparity among similarly-situated
> offenders.

U.S. Sentencing Comm'n, Report to Congress:  Downward Departures

from the Federal Sentencing Guidelines 66-67 (2003).  This

acknowledgment by the Sentencing Commission that the existence of

fast-track programs creates unwarranted disparities in sentencing

also militates in favor of imposing a non-Guidelines sentence.


## Double-Counting of Criminal History


Paulino-Melende also argues that the advisory Guideline

range of fifty-seven to seventy-one months' incarceration is

unreasonable because it double counts his criminal history, using

his prior convictions not only to enhance his criminal history

16

category but also to increase his offense level threefold. As one court considering this issue has noted, "although it is sound policy to increase a defendant's sentence based on his prior record, it is questionable whether a sentence should be increased twice on that basis." Galvez-Barrios, 355 F. Supp. 2d at 958. The Honorable Jed S. Rakoff cited this arbitrary aspect of the Guidelines in justifying a below-Guidelines sentence for a defendant charged with conduct similar to that of Paulino-Melende. See United States v. Ramon Ramirez, 04 Cr. 1021 (JSR).

This Court previously has imposed non-Guidelines sentences to discount the unreasonably harsh effects of double-counting in illegal re-entry cases. See Austin, 2006 WL 305462 at *8-*9; Santos, 406 F. Supp. 2d at 327-328.

In this case, double-counting is inappropriate. Nowhere but in the illegal re-entry Guidelines is a defendant's offense level increased threefold based solely on a prior conviction. Here, the Defendant's two convictions for Criminal Sale of a Controlled Substance in the Third Degree result in an increase of sixteen offense levels. In any criminal history category, such an adjustment increases the sentencing range by approximately five years. In the case of Paulino-Melende, those two convictions also account for six of his eight criminal history points, resulting in a criminal history category of IV.

17

The result of this double-counting produces a Guidelines range that is unreasonable, given the non-violent nature of the instant offense.

**The Sentence**

In determining the non-Guidelines sentence to be imposed in this case, it is appropriate to consider how other courts have approached the fast-track disparity and the double-counting issue. In this District, on October 28, 2005, the Honorable Kimba M. Wood imposed a non-Guidelines sentence based upon the unwarranted sentencing disparity in illegal reentry cases. See United States v. Vernal Mark Deans, 03 Cr. 387 (KMW). Judge Wood found that most fast-track illegal reentry jurisdictions on average reduce a sentence by four offense levels, and accordingly rejected the Guidelines range of seventy-seven to ninety-six months and imposed a sentence of fifty-one months. This Court previously has utilized the equivalent of a four-level reduction in the offense level in determining the length of non-Guidelines sentences. Santos-Nuez, 2006 WL 1409106 at *6; Santos, 406 F. Supp. 2d at 329; Linval, 2005 WL 3215155, at *7.

The court in Galvez-Barrios applied a three-level

18

departure to offset properly the double-counting of criminal
history in illegal re-entry cases. 355 F.Supp.2d at 964. This
Court has applied the equivalent of a three-level adjustment in a
number of recent cases involving double-counting. See Santos-
Nuez, 2006 WL 1409106 at *7; Austin, 2006 WL 305462, at *9;
Santos, 406 F. Supp. 2d at 329.

Accordingly, after accounting for the effects of the
fast-track disparity and double-counting, Paulino-Melende is more
appropriately sentenced at the equivalent of an offense level of
14. Under the Guidelines, an offense level of 14 and a Criminal
History Category of IV result in a range of twenty-seven to
thirty-three months.

In imposing the sentence, the Court considers the
Defendant's criminal history, including charges pending in
Massachusetts, his motive for illegal re-entry, and the fact that
he will face deportation proceedings following his release from
custody. Paulino-Melende is hereby sentenced to thirty months of
imprisonment, followed by a three-year term of supervised
release.

Paulino-Melende is directed to report to the nearest
United States Probation Office within seventy-two hours of

19

release from custody to commence his term of supervised release.

It is recommended that Paulino-Melende be supervised by the district of his residence.

As mandatory conditions of his supervised release, Paulino-Melende shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; (4) refrain from any unlawful use of a controlled substance, and shall submit to one drug testing within fifteen (15) days of placement on supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer; and (5) cooperate in the collection of DNA as directed by the probation officer.

The standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special condition that Paulino-Melende shall cooperate with all inquiries and directives of the Immigration and Customs Enforcement and comply with this country's immigration laws.

The fine in this case is waived. However, a special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

20

It is so ordered.

New York, NY
October 7 , 2008

ROBERT W. SWEET
U.S.D.J.

21